**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**VS.**                                       **NO. 4:04CR00175WRW**

**SCOTT LEVINE**                                                                              **DEFENDANT**

**ORDER**

In essence, Defendant was convicted of using passwords to gain unauthorized access to several thousand files owned by Acxiom Corporation. The question now is the amount of restitution.

The parties' vigor in presenting their respective positions leaves me much impressed, but little informed. They are only about $3.6 million apart ($29,658 vs. $3,659,532 -- the Prosecution originally calculated $6,939,600).

If I could find a level of comfort with the Prosecution's position, I wouldn't hesitate to order the amount of restitution it requests. Based upon the evidence presented at the trial, and at the other hearings, and the jury verdict (particularly the latter), I am persuaded beyond peradventure that Defendant trimmed his sails to do mischief apace and aplenty. The Prosecution's evidence, however, gives me little to tie to (outside of vigorous argument).

**I.      RESTITUTION STANDARD**

In this case, restitution is appropriate under the Mandatory Victims Restitution Act ("MVRA").[1] The Act requires a sentencing court to order a defendant to make restitution to the victim of the offense in the full amount of the victim's loss without consideration of the

---

[1] 18 U.S.C.A. § 3663A.

defendant's ability to pay.[2] The defendant's ability to pay is "relevant only in determining whether restitution should be paid by lump-sum, a schedule of payments, or nominal payments."[3] Restitution is authorized "only for the loss caused by the specific conduct that is the basis of the offense of conviction."[4]

**II.   DISCUSSION**

According to Acxiom, in efforts to secure the system, its Client Services, Security, and Company Leadership Teams responded to the intrusion by removing the passwords file, issuing new passwords, and assessing the scope of the breach. Acxiom representatives testified that the passwords were changed within the first 24 to 48 hours.[5] An Acxiom representative also testified that the company assessed the full scope of the intrusions within a week of discovery.[6]

---

[2]18 U.S.C.A. § 3664(f)(1)(A).

[3]*U.S. v. McGlothlin*, 249 F.3d 783, 784 (8th Cir. 2001) (citations omitted).

[4]*Hughey v. United States*, 495 U.S. 411, 413 (1990); *United States v. Reynolds*, 432 F.3d 821, 824 (8th Cir. 2005).

[5] *See* July 12, 2005 Transcript at pg 17.
   16  Q.  Okay.  So in that period of 24 or 48 hours, you were able to go back and change
          the passwords.
   17  A.  Yes.
*See also* February 22, 2006 Sentencing Hearing Transcript at 144.
   8  A.  That's correct.  That password file was no longer there.
   9  Q.  Okay.  And this, because Acxiom moved quickly, Acxiom got
   10   this accomplished in the first 24 hours.  Isn't that true?
   11  A.  Yes.
   12  Q.  And so within 24 hours, Acxiom had put its outside server
   13  back into a secure position; right?
   14  A.  Yes.
   15  Q.  Now, but Acxiom did not stop there.
   16  A.  No.

[6] *See* February 22, 2006 Sentencing Hearing Transcript at 145-46.
   25  Q.  And isn't it also true that by the end of the week, Acxiom
   1   was in a position to say Daniel Baas took eleven thousand one

Considering this testimony, I believe that the expenses of these three teams for a one-week period following the discovery of the breach can be attributed directly to the actions of Defendant. Additionally, these expenses were reasonable and necessary to return Acxiom to the position they would have been in but for Defendant's actions.

Exhibit 2B to the Sentencing Hearing lays out the cost for the Client Services, Security, and Company Leadership Teams over a six-week period. These costs are based on the salary and benefits of the Acxiom employees who were members of the teams. Specifically the costs are: Client Services Team -- $603,117.86; Security Team -- $182,529.61; and Leadership Team -- $134,724.07.[7] This total -- $920,371.54 -- must be divided by six to give the one-week total expense for the three teams. Based on Acxiom's figures, the total expense for the three teams for time spent fixing the weakness exposed by Defendant is $153,395.26. It appears to me that this is the appropriate restitution figure.

In coming to the $3.6 million figure, the Prosecution included many expenses that were outside the scope of expenses attributable to Defendant. For example, the Prosecution sought

---

   2  hundred and whatever it was files, and Snipermail apparently
   3  took about 4,789 files, approximately?  Isn't that right?
   4  A.  Yes, it is.
   5  Q.  But also, Acxiom took a deep breath, sigh of relief,
   6  because they did not find any other large volume of unauthorized
   7  accesses; correct?
   8  A.  That's correct.  We didn't find any other.
   9  Q.  Okay.  So by the end of the week, Acxiom had now -- was now
  10  in a position to tell its customers, the only two -- we've made
  11  a search.  The only two that were there was this IP address of
  12  Baas and this IP address of Snipermail; correct?
  13  A.  Yes.

[7] February 22, 2006 Sentencing Hearing, Ex. 2B.

restitution for third-party audits.  When asked about the necessity of the third-party audits, an Acxiom employee testified that they were necessary "to give our clients every assurance that it wasn't simply Acxiom who was determining that we had responded wholly and completely, we needed a third party to help develop confidence in our clients that we had done so."[8]  The Prosecution also sought money for labor and products -- "36 servers or pieces of hardware [and] proprietary encryption software that would be deployed on those servers"[9] necessary for *improved* security. Additionally, the Prosecution sought restitution for the legal and privacy team's expenses in "dealing with regulatory compliance and privacy concerns" with a California law.

An Acxiom employee testified that the audits, labor and product upgrades, and regulatory investigations  "made up the lion's share of the time and expense."[10]  I believe that these expenses, as well as others that are not addressed here, are above and beyond the expenses necessary to put Acxiom in the position it would have been had Defendant not accessed and copied Acxiom's files.

---

[8]*See* February 22, 2006 Sentencing Hearing Transcript at 133.

[9]*Id* at 137.

[10]*See Id* at 159-160.
```
18   Q.  Okay.  The substantial portion was the improvement of
19   security; is that correct?
20   A.  There was substantial time put in evaluation of our logs to
21   review the data and understand the attributes of the data, part
22   of what our account teams were doing, our client teams were
23   doing.  There was substantial effort in responding to client
24   concerns about Acxiom's security posture, answering questions
25   our clients raised, assisting clients in security audits.  There
                                 160
 1   was substantial time invested in understanding our regulatory
 2   obligations and substantial time put in deploying some of the
 3   security hardware and software that we put in place.
 4   Q.  All right.
 5   A.  That made up the lion's share of the time and expense.
```

## CONCLUSION

Restitution is ordered in the sum of $153,395.26, payable during incarceration and supervised release.  During incarceration Defendant will pay 50% per month of all funds that are available to him.  During community confinement placement, payments will be reduced to 10% of Defendant's gross monthly income.  Beginning the first month of supervised release, payments will be 10% per month of Defendant's gross monthly income.  The interest requirement is waived.

IT IS SO ORDERED this 12th day of April 2006.

/s/ Wm. R.Wilson,Jr.
UNITED STATES DISTRICT JUDGE